UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

.............................................................X

In re:

    Jean Rodriguez and Bertine Rodriguez,

                    Debtors.

.............................................................X

Chapter 13

Case No: 22-41816 jmm


**MEMORANDUM DECISION ON DEBTORS' MOTION FOR
VALUATION OF COLLATERAL, BIFURCATION OF CLAIMS AND
VOIDING OF LIENS PURSUANT TO 11 U.S.C. § 506**


Brian McCaffrey, Esq.
Brian McCaffry Attorney at Law, P.C.
88-18 Sutphin Blvd., 1ˢᵗ Floor
Jamacia, New York 11435
*Attorneys for Debtors*

Phillip A. Raymond, Esq.
McCalla Raymer Leibert Pierce, LLC
420 Lexington Avenue, Suite 840 New York, NY 10170
*Attorneys for Citibank, N.A., as trustee for CMLTI Asset Trust by Fay Servicing, LLC, Secured Creditor*

**INTRODUCTION**

Jean and Bertine Rodriguez (the "Debtors") request that this Court enter an order, pursuant to Bankruptcy Code sections 506(a)(1) and (d), that fixes the fair market value of their jointly owned real property at $195,000 and avoids the mortgage on the property to the extent the mortgage secures a claim greater than the value of the property.  The mortgagee objects to the relief requested by the Debtors claiming the property has a fair market value of $390,000.  For the reasons set forth herein, the Court finds that the property's fair market is $330,000 and holds that the mortgagee shall have an allowed secured claim in that amount.  The Court will not avoid the mortgagee's lien to the extent its claim exceeds the value of the property at this time.  Rather, the Court will consider lien avoidance in connection with confirmation of the Debtors' chapter 13 plan in accordance with Bankruptcy Code sections 1325(a)(5) and 1327(c).

**JURISDICTION**

The Court has jurisdiction over this contested matter under 28 U.S.C. § 1334(b), 28 U.S.C. § 157(a), and the Standing Order of Reference entered by the United States District Court for the Eastern District of New York dated August 28, 1986, as amended by Order dated December 5, 2012.  This contested matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(B), (K), and (O).

**BACKGROUND**

**The Bankruptcy Case and the Motion**

On July 28, 2022, the Debtors filed a voluntary petition for relief under chapter 13, title 11, United States Code (the "Bankruptcy Code") with the Clerk of the Bankruptcy Court for the

Eastern District of New York that commenced this bankruptcy Case (the "Bankruptcy Case"). *In re Rodriguez*, Case No. 22-41816, ECF No. 1.[1]

The Debtors jointly own a two-family house located at 24 Argyle Terrace, Irvington Township, New Jersey (the "Property"). *See* Schedule A/B: Property, ECF No. 35.

Citibank, N.A., as Trustee for CMLTI Asset Trust by Fay Servicing, LLC, the Servicing Agent (the "Mortgagee") filed a proof of claim, identified on the Bankruptcy Case's claims register as Proof of Claim number 5-1 (the "POC"). The POC asserts a $572,986.23 claim that is fully secured by a mortgage on the Property.

The Debtors seek a finding that the Property's fair market is $195,000 and an order that bifurcates and allows the Mortgagee's claim as a secured claim of $195,000 and an unsecured claim for the difference between the $572,986.23 claim asserted in the POC and the $195,000 allowed secured claim.[2] Also, the Debtors request the Court avoid the Mortgagee's lien on the Property to the extent the lien purports to secure a claim in excess of the allowed secured claim. Notice of Motion for Valuation of Collateral, Bifurcation of Claims and Voiding of Liens pursuant to 11 U.S.C. § 506, ECF No. 10 (the "Motion").

The Mortgagee objected to the Motion claiming the Property's fair market value was $380,000 and its secured claim should be fixed and allowed in that amount. *See* Attorney Affirmation in Opposition to Debtor's Motion for Valuation of Collateral, Bifurcation of Claims and Voiding of Liens pursuant to 11 U.S.C. § 506 (the "Objection"), ECF No. 22, at ¶ 9.

---

[1] Documents filed on the docket of the Bankruptcy Case are hereinafter referred to as "ECF No. __."

[2] The parties agree the Property is not the Debtors' principal residence, therefore Bankruptcy Code section 1322(b)(2) would not preclude the Debtors from modifying the Mortgagee's rights.

Subsequently, the Mortgagee changed its position and claimed the Property's fair market value was $390,000.  Appraisal, ECF No. 44-4 (the "Mortgagee Appraisal").[3]

**The Evidentiary Hearing**

On January 23, 2023, the Court held an evidentiary hearing on the Motion and the Objection.  Kirsten Cable ("Debtor's Expert") testified for the Debtors and Paul Sobel, ("Mortgagee's Expert") testified for the Mortgagee.

The Debtors and Mortgagee stipulated that each witness was qualified to opine on the value of the Property and the written appraisals prepared by each witness would be admitted into evidence.  Jan. 23, 2023 Tr. 4:21 – 5:4.  The Debtor's Expert's appraisal ("Debtor Appraisal") and the Mortgagee Appraisal are docketed at Bankruptcy Case ECF Nos. 44-1 and 44-4, respectively.

The two experts agree the Property is approximately 59 years old, has a two-car garage, and has two residential units with each unit being approximately 1,212 square feet and consisting of six rooms, inclusive of three bedrooms, plus two bathrooms.  Mortgagee Appraisal at page 2 of 5; Debtor Appraisal at page 1, 2, and 3 of 7.  The two experts also agree the basement is partially finished with a shower and toilet.  Mortgagee Appraisal at page 2 of 5; Tr. 22: 9-20.  The Property does not have a finished attic space or porch.  Tr. 22: 10, 17.

Debtor's Expert testified that the Property's condition is average to below average.  Tr. 17: 5-13.  Mortgagee's Expert described the Property's condition as "average."  Mortgagee Appraisal at 1 of 5.

Debtor's Expert and Mortgagee's Expert agree that using comparable sales is the best methodology to establish the Property's value.  Tr. 13: 11-15; 43: 4-6.  However, the two experts

---

[3] Mortgagee's Expert testified his opinion of the fair market value changed because the Property had more bathrooms than he initially believed. Tr. 51: 9-14.

used different comparable sales to determine the value of the Property.  Neither of the experts considered comparable sales used by the other expert.

In selecting comparable sales, Debtor's Expert considered the size, type, location, and condition of properties.  Tr. 12: 20-25; 14: 10-11.  Debtor's Expert emphasized the significance of property condition in an appraisal.  Tr. 13: 1-4 ("We look at the … exterior to see if the siding is updated, if there's mold, if there's a deferred maintenance, if there's any upgrades or lack of upgrades, we observe the entire interior and exterior based on our physical inspection."); Tr. 53: 15-22 (indicating one could not appraise a property in poor condition with reference to a newly constructed property, even if that property was next door); Tr. 61: 9-14 (testifying that the condition of a house is more important than age).  Debtor's Expert adjusted the value of each comparable sale up or down to reflect that no two properties are exactly alike and "even if they are similar, like the same developer … some …  may have mold in the basement.  Some persons may have put thirty or forty thousand into their kitchen." Tr. 15: 22-23; 16: 17-20.  However, Debtor's Expert conceded he typically cannot access the interior of most properties that are sold and must rely on "MLS photos, photos online, speaking with local brokers, realtors.  And whatever data we have." Tr. 27: 22-25.

Mortgagee's Expert testified respecting the criteria he used to select comparable sales. Mortgagee's Expert's first criteria was to select sales within the subject neighborhood.  Tr. 43: 10-12.  Next, Mortgagee's Expert considered how similar the comparable sale's layout was to the subject property.  Tr. 43: 12-13.  Then, Mortgagee's Expert considered whether a sale was at arms' length as opposed to a foreclosure or short sale.  Tr. 43:23-25.  Like Debtor's Expert's testimony, Mortgagee's Expert testified that adjustments to sales prices are necessary to reflect differences between the subject property and the comparable sale.

<u>Debtor's Expert's Comparable Sales</u>

Debtor's Expert claims the relevant comparable sales are the following Irvington, New Jersey properties:  639 Grove Street; 24 Grace Street; 129 Brookside Avenue; and 515 Grove Street.

<u>639 Grove Street</u>

The Debtor Appraisal describes 639 Grove Street as a two-family home, in average condition, with a two-car garage and finished basement with a full bathroom, that is .25 miles from the Property.  Debtor Appraisal at page 3 of 7.  639 Grove Street's two units each have one bathroom, whereas the Property's two units each have two bathrooms.  *Id.*  639 Grove Street's 2,100 square foot gross building area is smaller than the Property's 2,424 gross building area.  *Id.* Additionally, 639 Grove Street is 115 years old, whereas the Property is 59 years old.  *Id.*  639 Grove Street sold for $135,000 on July 28, 2021.  Debtor's Expert adjusted the 639 Grove Street sale price upward by $11,340 to account for the Property's larger square footage and by $14,000 to account for the Property's two additional bathrooms.  As adjusted, Debtor's Expert values 639 Grove Street at $160,340.  *Id.*

Mortgagee's Expert disagrees with Debtor's Expert's characterization of 639 Grove Street as having two residential units.  Tr. 72: 6-10.  Mortgagee's Expert claims 639 Grove Street has one commercial unit and one residential unit, and that difference explains why the property sold so cheaply.  *Id.*  However, the Mortgagee's Expert did not provide evidentiary support for that contention.

<u>24 Grace Street</u>

Debtor's Expert describes 24 Grace Street as a two-family home, in better condition than the Property, with a two-car garage, porch/patio, central air conditioning, finished basement with

full bath, and attic with full bath, that is .70 miles from the Property.  Debtor Appraisal at page 3 of 7.  Like the Property, each of the two units has six rooms, inclusive of three bedrooms plus two bathrooms.  *Id.*  24 Grace Street is 112 years old, whereas the Property is 59 years old.  24 Grace Street is a pending listing with a sales price of $245,000.  Debtor's Expert adjusted the value downward by $54,935 to reflect 24 Grace Street's central air conditioning, porch/patio, and attic with fireplace because those features are not present in the Property.  *Id.*  As adjusted, Debtor's Expert values 24 Grace Street at $190,065.  *Id.*

### 129 Brookside Avenue

Debtor's Expert describes this property as a two-family home in slightly better condition than the Property, with a two-car garage and a porch/patio, attic, and fireplace.  Debtor Appraisal at page 3 of 7.  One unit has six rooms, inclusive of three bedrooms plus two bathrooms.  *Id.*  The other unit has five rooms inclusive of three bedrooms with one full bathroom and one half-bathroom.  *Id.*  The gross building area is 1,700 square feet compared with the Property's 2,424 square feet.  *Id.*  129 Brookside Avenue sold for $205,000 on November 17, 2021.  Debtor's Expert reduced the value of 129 Brookside Avenue by $19,475 to reflect 129 Brookside Avenue's slightly better condition and by $20,000 to reflect that 129 Brookside Avenue has a porch/patio, attic, and fireplace because those features are not present in the Property.  *Id.*  Debtor's Expert adjusted the value upward by $25,340 to account for the Property's larger gross building size.  *Id.*  As adjusted, Debtor's Expert values 129 Brookside Avenue at $194,365.  *Id.*

### 515 Grove Street

Debtor's Expert describes this property as a two-family home in slightly better condition than the Property, with a two-car garage, and a porch, that is .54 miles from the Property.  Debtor

Appraisal.[4]  Both units have six rooms, inclusive of three bedrooms.  *Id*.  One unit has two bathrooms and the other has one and one-half bathrooms.  *Id*.  The basement is finished but does not have a bathroom.  *Id*.  515 Grove Street is 112 years old, whereas the Property is 59 years old. *Id*.  515 Grove Street has been for sale at $210,000 since March 17, 2020.  *Id*.  Debtor's Expert adjusted 515 Grove Street's value downward by $10,000 to reflect that the property is under contract but has not sold and by an additional $19,950 to reflect that it is in better condition than the Property.  *Id*.  Debtor's Expert adjusted the price upward by $9,450 to reflect the Property's larger gross building area (2,424 square feet versus 1,634 square feet) and by $7,000 because 515 Grove Street does not have a bathroom in the basement.  *Id*.  As adjusted, Debtor's Expert values 515 Grove Street at $195,000.

Mortgagee's Comparable Sales

Mortgagee's Expert used six comparable sales in Irvington, New Jersey:  21 Argyle Terrace; 28-30 Breckenridge Terrace; 491 20th Street; 30 Argyle Terrace; 21 Tichenor Terrace; and 25 Argyle Terrace.

21 Argyle Terrace

Mortgagee's Expert describes this property as a two-family house, approximately 60 years old, with a two-car garage and a partially finished basement, that is .03 miles from the Property and in the same condition as the Property.  Mortgagee Appraisal at page 3 of 5.  Each of the two units has six rooms, inclusive of three bedrooms, plus one bathroom.  *Id*.  21 Argyle Terrace has a gross building area of 2424 square feet compared with the Property's 2442 square feet.  *Id*.  21 Argyle Terrace sold for $390,000 in October 2021.  *Id*.  Mortgagee's Expert adjusted the price

---

[4] This page is not numbered.

upward by $24,000 to reflect that the Property has three more bathrooms than 21 Argyle Terrace. *Id*. Mortgagee's Expert's adjusted price for 21 Argyle Terrace is $414,000. *Id*.

### 28-30 Breckenridge Terrace

Mortgagee's Expert describes this property as a two-family house, approximately 59 years old, with a two-car garage and a partially finished basement with a lavatory, that is .23 miles from the Property and is in the same condition as the Property. Mortgagee Appraisal at page 3 of 5. Each of the two units has six rooms, inclusive of three bedrooms, plus one bathroom. *Id*. 28-30 Breckenridge Terrace has a gross building area of 2400 square feet compared with the Property's 2442 square feet. *Id*. 28-30 Breckenridge Terrace sold for $347,000 in October 2021. *Id*. Mortgagee's Expert adjusted the price upward by $20,000 to reflect that the Property has two and one-half more bathrooms than 28-30 Breckenridge Terrace. *Id*. Mortgagee's Expert's adjusted price for 21 Argyle Terrace is $367,000. *Id*.

### 491 20th Street

Mortgagee's Expert describes this property as a two-family house, approximately 21 years old, that is .65 miles from the Property and is in better condition than the Property. Mortgagee Appraisal at page 3 of 5. Each of the two units has six rooms, inclusive of three bedrooms, plus one bathroom. *Id*. 491 20th Street has a gross building area of 2000 square feet compared with the Property's 2442 square feet. *Id*. 491 20th Street sold for $430,000 in May 2021. *Id*. Mortgagee's Expert adjusted the price downward by $34,000 to reflect that 491 20th Street is in better condition than the Property. *Id*. Mortgagee's Expert adjusted the property upward by: $17,700 to reflect that 491-20th Street is smaller than the Property; $16,000 to account for the Property's two additional bathrooms; $10,000 to reflect that the Property has a basement; and $13,000 to reflect

the Property's basement is finished with a bathroom.  *Id.*  Mortgagee's Expert's adjusted price for 491 20th Street is $458,300.

### 30 Argyle Terrace

Mortgagee's Expert describes this property as a two-family house, approximately 59 years old, that is .01 miles from the Property that is in the same condition as the Property.  Mortgagee Appraisal at page 3 of 5.  Each of the two units has six rooms, inclusive of three bedrooms, plus two bathrooms.  *Id.*  30 Argyle Terrace has a gross building area of 2424 square feet compared with the Property's 2442 square feet.  *Id.*  30 Argyle Terrace sold for $330,000 in June 2022 after 79 days on the market.  Mortgagee's Expert made no adjustments to value.  *Id.*

### 21 Tichenor Terrace

Mortgagee's Expert describes this property as a two-family house, approximately 60 years old, that is .25 miles from the Property that is in better condition than the Property.  Mortgagee Appraisal at page 3 of 5.  Each of the two units has six rooms, inclusive of three bedrooms, plus one bathroom.  *Id.*  21 Tichenor Terrace has a gross building area of 2166 square feet compared with the Property's 2442 square feet.  *Id.*  21 Tichenor Terrace sold for $419,999 in August 2022.  *Id.*  Mortgagee's Expert adjusted the price downward by $33,600 to reflect that 21 Tichenor Terrace is in better condition than the Property.  *Id.*  Mortgagee's Expert adjusted 21 Tichenor Terrace's value upward by:  $11,000 to reflect that 21 Tichenor Terrace is smaller than the Property; $16,000 to account for the Property's two additional bathrooms; and $8,000 to reflect the Property's basement is finished with a bathroom.  Mortgagee's Expert's adjusted price for 21 Tichenor Terrace is $421,399.  *Id.*

<u>25 Argyle Terrace</u>

Mortgagee's Expert describes this property as a two-family house, approximately 61 years old, that is .02 miles from the Property and is in better condition than the Property.  Mortgagee Appraisal at page 3 of 5.  Each of the two units has six rooms, inclusive of three bedrooms, plus one bathroom.  *Id*.  The property has a finished basement with a lavatory.  *Id*.  25 Argyle Terrace has a gross building area of 2046 square feet compared with the Property's 2442 square feet.  *Id*. 25 Argyle Terrace is being marketed for $419,000.  *Id*.  Mortgagee's Expert adjusted the price downward by $33,520 to reflect that 25 Argyle Terrace is in better condition than the Property. *Id*.  Mortgagee's Expert adjusted the property value upward by:  $15,800 to reflect that 25 Argyle Terrace is smaller than the Property; $16,000 to account for the Property's two additional bathrooms; and $4,000 to reflect the Property's basement is finished with a full bathroom.  *Id*. Mortgagee's Expert's adjusted price for 25 Argyle Terrace is $421,280.

## **DISCUSSION**

<u>The Allowed Amount of Mortgagee's Secured Claim</u>

Bankruptcy Code section 506(a)(1) provides, in relevant part:

(a)(1) An allowed claim of a creditor secured by a lien on property in which the estate has an interest … is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property … and is an unsecured claim to the extent that the value of such creditor's interest … is less than the amount of such allowed claim.

11 U.S.C. § 506.  The ultimate burden of persuasion is on the creditor to demonstrate by a preponderance of the evidence both the extent of its lien and the value of the collateral securing its claim.  *In re Heritage Highgate, Inc.*, 679 F.3d 132, 140 (3d Cir. 2012) (internal quotations omitted); *In re Walsh*, No. 20-73145-REG, 2021 WL 4047468 *2 (Bankr. E.D.N.Y. Sept. 3, 2021). Both parties agree the Property's fair market value should be determined by reviewing comparable sales.  Tr. 13: 11-15; 43: 4-6.  Despite agreement on methodology, the experts' appraisals are

strikingly different.  Mortgagee's Expert claims the Property's fair market value is $390,000, while the Debtor's Expert claims it is $195,0000. [5]  Valuation is an art and not a science.  As such, the Court is not bound to accept either parties' opinion respecting the Property's value and may form its own opinion as to the value of the subject property.  *In re Karakas,* No. 06-32961, 2007 WL 1307906, at *5 (Bankr. N.D.N.Y..May 3, 2007) (citing *In re Richards*, Case No. 97-14798, 1999 WL 14680 at *7 (Bankr. E.D.Pa. Jan. 12, 1999); *In re Lepage*, No. 8-10-74093-REG, 2011 WL 1884034, at *4 (Bankr. E.D.N.Y. May 18, 2011).

Neither expert appraisal accurately reflects the Property's fair market value because each appraisal relies, in part, on comparable sales that are dissimilar from the Property.

Certain of the comparable sales are buildings that are significantly older or newer than the Property.  Three of Debtor's Expert's comparable sales – 639 Grove Street, 24 Grace Street, and 515 Grove Street – are significantly older than the Property.  Debtor's Expert testified the actual age of a comparable sale is irrelevant; rather, the relevant data is the "effective age" of a comparable sale.  Tr. 26: 25 – 27:1 ("because of the way we appraise, which is typical for all appraisers, we look at the effective age of the property.").  The Debtor's Expert also testified respecting considerations for calculating a comparable sale's effective age generally.  Tr. 27:4-9 ("Generally, we base it upon updates and improvements. … materials, … knowledge … of the local market area houses, and the local market area, to come up with an effective age.  All appraisers do this.").  Neither the Debtor's Expert's testimony nor the Debtor Appraisal, however, included information specific to these three comparable sales respecting updates, materials, or the local market.  Absent specific information, the Court cannot assess whether the Debtor's Expert's

---

[5] Despite the disparity between the two appraisals, the parties did not seek a third appraiser.  Anecdotally, a dispute respecting the fair market value of a real property like this can be resolved by obtaining an appraisal from an expert chosen by each parties' experts.  The Debtors and the Mortgagee chose not to utilize this common and relatively inexpensive option.  Tr. 74: 4-8.

calculation of the effective age is reasonable and will not afford any weight to the Debtor's Expert's opinion that each comparable sale's effective age is dramatically lower that its actual age. Similarly, Mortgagee's Expert opines that 491-20th Street is a comparable sale, but it is half the Property's age.  The Mortgagee's Expert adjusted 491-20th Street's value downward to account for its age.  However, Mortgagee's Expert did not explain his methodology for calculating the adjustment.  Absent specific information regarding how the Mortgagee's Expert calculated the adjustment, the Court cannot determine its reasonableness and will not afford any weight to Mortgagee's Expert's calculation of 491-20th's Street's adjusted value.

Certain of the comparable sales are relatively far from the Property. 24 Grace Street is .70 miles from the Property and 515 Grove Street is .54 miles from the Property.  Those two comparable sales were used by Debtor's Expert.  491 20th Street, relied on by Mortgagee's Expert, is .65 miles from the Property. The distance is significant given the number of comparable properties that are less than a quarter mile from the Property.

Two of the comparable sales are not reliable because the sales did not close.  515 Grove Street, one of Debtor's Expert's comparable sales, has been under contract since March 17, 2020, but has not closed.  25 Argyle Terrace, relied on by Mortgagee's Expert, is an active listing and has not yet sold.

The Court believes the following comparable sales are indicative of the Property's fair market value:

| **Property Address** | **Date of Closing** | **Adjusted Sales Price** |
|---|---|---|
| Debtor's Expert's Comparable Sale: | | |
| 129 Brookside Avenue | November 17, 2021 | $194,365 |

| **Property Address** | **Date of Closing** | **Adjusted Sales Price** |
|---|---|---|
| Mortgagee's Expert's Comparable Sales: | | |
| 30 Argyle Terrace | June 2022 | $330,000 |
| 28-30 Breckenridge Terrace | October 2021 | $367,000 |
| 21 Argyle Terrace | October 2021 | $414,000 |
| 21 Tichenor Terrace | August 2022 | $421,399 |

Debtor contends none of Mortgagee's Expert's comparable sales reflect the Property's fair market value because each comparable sale is in better condition than the Property.  Specifically, Debtor argues the Mortgagee's Expert has not properly considered the Property's mold, water in the basement, antiquated siding, or that the Property appears "beat up."  Debtor's Post Trial Brief in support of Debtor's Motion for Valuation of Collateral, Bifurcation of Claims and Voiding of Liens Pursuant to 11 U.S.C. § 506, ECF No. 50 at ¶ 19.  Debtor argues the Mortgagee's Expert erred in comparing the Property to "brand new construction and renovated properties."  *Id;* Tr. 53:15-22. ("this property is … pretty beat up in certain areas, there are mold and things like that, then you would -- you would find other properties that are similar.  You … can't appraise it to the brand-new construction next door.").

Although the Debtor's Expert testified the Property had mold, water damage, was "beat up," and none of the bathrooms, the kitchen, nor the siding had been updated (Tr. 53:15-22; Tr. 67: 1-12), the Debtor's Expert did not provide any details respecting the extent of the mold or water issues.  Regarding the water issues, the Debtor's Expert said the Property had "water running through it" (Tr. 53:15-22) but, when asked specifically about the water damage, the Debtor's Expert testified only that there was "deferred maintenance in the basement."  Tr. 66:12-23. Regarding mold, the Debtor's Expert testified that the mold issue was typical of a building like the

Property.  Tr.  67: 1-12.  Additionally, the Debtor Appraisal states there are no adverse site conditions or external factors at the Property (including no environmental conditions); there are no physical deficiencies or adverse conditions that affect the livability, soundness, or structural integrity of the Property, and the Property generally conforms to the neighborhood in terms of functional utility, style, condition, use, and construction.  Debtor Appraisal at page 1 of 7 and 2 of 7.  The Court believes a mold or water condition that significantly impacts the Property's value should have been identified in the Debtor Appraisal or Debtor's Expert's testimony.

Further, Mortgagee's Expert did consider the Property's mold issue, testifying:

> I think it's cosmetic.  I mean, it's just a matter of -- I know I'm not a home inspector, so I don't know if there's seepage behind the walls and of that nature.  But typically, if -- if properties -- and you don't want to judge or legislate how people live.  But if it -- if things aren't maintained properly, particularly in a bathroom, you can have mold on the silicone that goes around the tub that keeps that water from flowing behind it.  Can mold build up there?  Absolutely.  Does it mean there's anything greater than that? That -- that's for -- for a home inspector or someone that's going to do a more invasive inspection to determine.

Tr. 71:17–72:2.

Additionally, the Mortgagee's Expert adjusted the price of the comparable sales he used to reflect differences in condition.  *See* Mortgagee Appraisal at 13 (adjusting 21 Tichenor Terrace's value downward by $33,600 and 25 Argyle Terrace's value downward by $33,520 to reflect that those properties are in "Average +" condition as compared to the Property's "Average" condition.).  Although the Mortgagee's Expert did not explain how he calculated the downward adjustments, Debtor's expert offered no testimony to the effect that the downward adjustments were inadequate.  Instead, Debtor's Expert offered general statements regarding the impropriety of comparing the Property to those in better condition.

The average adjusted sale price for the five comparable sales listed above is $345,352 with a standard deviation of $91,191.  Accordingly, the value of the Property likely ranges from

$254,161 to $436,544.  The median comparable sale is 28-30 Breckenridge Terrace, with an adjusted sale price of $367,000.  However, 30 Argyle Terrace is the comparable sale that most closely resembles the Property because it is the same age as the Property, has the same configuration as the Property (i.e., 6 rooms/3 bedrooms/2 bathrooms), is on the same street as the Property (and likely no more than 10 houses away from the Property), and was sold relatively recently in June 2022.  The adjusted value of 30 Argyle Terrace is $330,000.  Therefore, assigning a value to the Property of $330,000 – which is within the range of adjusted sale prices and relatively close to the average – appears to be realistic and to comport with the evidence presented.

<u>Avoidance of the Lien to the Extent it Secures a Claim Exceeding the Allowed Secured Claim</u>

Bankruptcy Code section 506(d) states:

To the extent that a lien secures a claim against the debtor that is not an allowed secured claim, such lien is void, unless –

(1) such claim was disallowed only under section 502(b)(5) or 502(e) of this title; or

(2) such claim is not an allowed secured claim due only to the failure of any entity to file a proof of such claim under section 501 of this title.

11 U.S.C. § 506(d).  Although counterintuitive, Bankruptcy Code section 506(d), standing alone, does not provide a statutory basis to avoid a lien securing an undersecured claim.  *Dewsnup v. Timm*, 502 U.S. 410, 415, 112 S.Ct. 773,777 (1992).  Bankruptcy Code sections 1325(a)(5), which sets forth the requirements for confirmation of a chapter 13 plan, may provide the statutory basis for lien avoidance in a chapter 13 case.  *Wong v. Green Tree Servicing, LLC, et al. (In re Wong)*, 488 B.R. 537, 546 (Bankr. E.D.N.Y. 2013).  Accordingly, the Court will not avoid Mortgagee's lien but will consider avoidance at the hearing on confirmation of the Debtors' chapter 13 Plan.  *But see In re Wimmer*, 512 B.R. 498, 505 (Bankr. S.D.N.Y. 2014) (lien may be avoided prior to confirmation of chapter 13 plan and reinstated upon conversion or dismissal of the case.)

## **CONCLUSION**

For the reasons stated above, Mortgagee's secured claim is allowed in the amount of $330,000.00. The Court will consider lien avoidance in connection with confirmation of the Debtors' chapter 13 plan. Mortgagee is directed to submit an order conforming to this decision.



Dated: April 21, 2023
   Brooklyn, New York

Jil Mazer-Marino
United States Bankruptcy Judge